IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WELBORN PRESTON III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:04-CV-1924-P |
| | § | |
| PEGASUS SOLUTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Pegasus Solutions, Inc.'s Motion for Partial Summary Judgment, filed January 17, 2006. Plaintiff responded on February 6, 2006, and Defendant replied on February 20, 2006. For the reasons stated below, the Court hereby GRANTS Defendant's Motion for Partial Summary Judgment. Plaintiff's Title VII discrimination claim against Defendant is thus DISMISSED WITH PREJUDICE. In addition, Defendant is entitled to recover, pursuant to Texas Civil Practice and Remedies Code § 38.001(a), attorneys fees in the amount of $27,486.45.

### I. Background

The instant suit arises out of Defendant's decision to terminate Plaintiff's employment on December 5, 2002. Plaintiff claims that race was a motivating factor behind the decision in violation of Title VII of the Civil Rights Act of 1964. Defendant maintains that Plaintiff's claims are barred because he agreed to release any claims against the company in return for severance benefits. Defendant further argues that, even if the release is invalid, it is still entitled to summary judgment because Plaintiff was terminated due to his performance and not his race.

Plaintiff, a 31 year old African-American male, is a high school graduate who attended Morehouse College for two and a half years and the University of Texas at Austin for one year. (Def.'s App. at 14: Preston Dep. 14:4–10.) He was hired by Defendant in July 2000 as a manager of sales in the Pegasus Financial Services unit. (*Id.* at 18: Preston Dep. 31:25–32:12.) In this position, he interacted and negotiated with executive level employees at major travel corporations. For example, on September 18, 2002, Plaintiff traveled to Washington, D.C., to meet with the Chief Financial Officer and Vice President of Vendor Relations of Omega World Travel. (*Id.* at 108–09: Singer Dep. 8:18–10:7.) At that time, Omega had over 1,000 employees and revenues in excess of one billion dollars. (*Id.* at 108: Singer Dep. 9:7–13.) Around the same time, Plaintiff also attended a meeting with the Chief Financial Officer of Travelocity. (*Id.* at 119–20: Johnson Dep. 12:14–13:6.)

On October 3, 2002, Plaintiff was redeployed from his management position to a new position focusing on the sale of a new product. (*Id.* at 135–36.) A memorandum issued at the time of the decision states that the transfer was based on performance issues. (*Id.*) Plaintiff, however, claims it was motivated by race. (*Id.* at 53: Preston Dep. 200:3–12.)

Plaintiff's employment with the company was terminated on December 5, 2002, allegedly due to "continued performance issues." (*Id.* at 61: Preston Dep. 230:18–22.) At the time of his exit meeting, Plaintiff was provided with a document styled "Agreement and Release" (hereinafter "the Agreement"). (*Id.* at 61: Preston Dep. 232:11–233:17.) The Agreement provides for a cash payment to Plaintiff and reimbursement of certain COBRA expenses in exchange for his releasing "any and all claims for relief of any kind, whether known to me or unknown, which in any way arise out of

or relate to [his] employment or the termination of [his] employment . . . including, but not limited to, any and all claims of discrimination of any kind . . . ." (*Id.* at 146.) The Agreement expressly includes "all such claims under any applicable Federal laws, including, but not limited to . . . Title VII of the Civil Rights Act of 1964 . . . ." (*Id.* at 147.)

Defendant initially offered Plaintiff a $12,000 severance payment "based on [his] tenure." (*Id.* at 61: Preston Dep. 233:20.) Plaintiff rejected this offer based on his belief that he was owed $23,000 under the company's bonus program. (*Id.* at 64: Preston Dep. 242:3–5.) However, Defendant's former Director of Human Resources, Carolyn Lane (hereinafter "Lane"), testified that Plaintiff was not entitled to a bonus due to his performance issues and the fact that he was not employed at the time of the bonus payment. (*Id.* at 140: Lane Dep. 81:13–16.) Plaintiff himself admitted at his deposition that his entitlement to the bonus is "debatable." (*Id.* at 61: Preston Dep. 233:20.)

The parties negotiated the amount of the bonus for several days, and on December 11th Plaintiff's former supervisor, Joan England (hereinafter "England"), called him and increased the offer to $17,950. (*Id.* at 64: Preston Dep. 242:10–20.) Plaintiff did not agree to the amount at that time. (*Id.* at 64: Preston Dep. 242:22–24.) Later that day, he spoke with Lane, and she agreed to fax a revised agreement to him reflecting the increased severance amount. (*Id.* at 64: Preston Dep. 244:4–8.) Once he received the revised agreement, Plaintiff spoke with Lane again and requested more money. (*Id.* at 65: Preston Dep. 246:15–24.) Lane agreed to present his request to the relevant decision makers. (*Id.*) She called him back later and told him that he "needed to return the agreement or she was going to pull it." (*Id.* at 65: Preston Dep. 247:2–5.) Plaintiff signed the

Agreement on December 11, 2002, and received a severance payment in the amount of $12,262.51 the next day.[1]  (*Id.* at 67: Preston Dep. 254:5–6.)

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.  However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  In addition, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th

---

[1]  Defendant deducted Federal Income Tax in the amount of $5,427.21 and Medicare Tax in the amount of $260.28.

Cir. 1993).  In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  Finally, the Court has no duty to search the record for triable issues.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. Analysis

#### A. Plaintiff Knowingly and Willfully Released Any Discrimination Claims

Defendant claims that Plaintiff cannot bring the instant suit because he agreed to release any claims in exchange for severance benefits.  Plaintiff, however, maintains that the severance agreement is unenforceable because there was no consideration for the exchange and it was signed under duress.

"The interpretation and validity of a release of claims under Title VII is governed by federal law." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002).  Under federal law, "[a] release of a Title VII claim is valid only if it is 'knowing and voluntary.'" *Id.* (quoting *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir. 1986)).  "In determining whether a release was knowingly and voluntarily executed, [the Fifth Circuit] has adopted a 'totality of the circumstances' approach." *Id.* (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

Under this approach, the moving party has the burden of "establish[ing] that his opponent

signed a release that addresses the claims at issue, received adequate consideration, and breached

the release . . . ." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994). Once this

is established, "the opponent has the burden of demonstrating that the release was invalid because

of fraud, duress, material mistake, or some other defense." *Id.* The following six factors are relevant

to determine whether the employee has met the burden of establishing a defense to the validity of

the release:

> (1) the plaintiff's education and business experience, (2) the amount of time the
> plaintiff had possession of or access to the agreement before signing it, (3) the role
> of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the
> agreement, (5) whether the plaintiff was represented by or consulted with an
> attorney, and (6) whether consideration given in exchange for the waiver exceeds
> employee benefits to which the employee was already entitled by contract or law.

*O'Hare*, 898 F.2d at 1017. "No single factor is necessarily dispositive in this analysis." *Uherek v.*

*Houston Light & Power Co.*, 997 F. Supp. 789, 792 (S.D. Tex. 1998).

Here, Defendant has met its initial burden. Plaintiff does not contest signing the Agreement,

nor does he dispute that its plain language appears to bar the instant suit. Instead, he argues that the

Agreement is unenforceable because he did not receive adequate consideration. (Resp. at 10–14.)

According to Plaintiff, he was already owed the full amount of the severance payment under the

employer's bonus program and the payment therefore constitutes past consideration. (Resp. at

10–11.) This argument, however, ignores the uncontested evidence indicating that the amount of

money owed under the bonus program, if any, was the subject of dispute at the time of the severance

payment. The Fifth Circuit has held that there is adequate consideration to support a Title VII

release where a plaintiff "gave up a disputed right to the benefits he would have received . . . for an

undisputed right to a smaller package of benefits." *O'Hare*, 898 F.2d at 1017; *see also Amedisys*, 298 F.3d at 443 n.3. This is precisely the situation here. Plaintiff gave up the disputed right to a $23,000 bonus payment for the undisputed right to a $5,950 increase from the original offer of $12,000. Plaintiff's argument that there is inadequate consideration also ignores the fact that Plaintiff received more than just the severance pay under the Agreement. He also received the right to reimbursement for nearly two months of COBRA medical insurance. In short, Defendant has successfully carried its initial burden of showing that Plaintiff signed the release, received adequate consideration for doing so, and breached it by filing the instant suit.

It is therefore Plaintiff's burden to establish an affirmative defense to the validity to the release. Plaintiff claims that the release is unenforceable because it was signed under duress. In particular, Plaintiff claims that Defendant threatened to revoke its offer of $17,950 unless he signed it immediately and did so with knowledge of his financial difficulties and the fact that he was responsible for caring for his mother in her illness. (Resp. at 14–16.)

In order to establish duress as an affirmative defense to a contract, plaintiff must show that there is (1) "a threat to do some act which the party threatening has no legal right to do," (2) "some illegal exaction or some fraud or deception," and (3) "the restraint must be imminent and such as to destroy free agency without present means of protection." *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980). Plaintiff has failed to make such a showing. A company certainly has the right to settle any potential employment discrimination claims and negotiations are part of this process. These negotiations will often involve "emotional strain and negotiation pressures," but by itself this is not enough to overcome the will of a party to a contract. *See Lee*, 631 F.2d at 1178. Here, the record

shows that the parties were vigorously negotiating the amount of the severance, but it does not show "persuasion, entreaty, importunity, argument, intercession, and solicitation . . . so strong as to subvert and overthrow the will of the person to whom they are directed." *Id.* After Defendant made its initial offer, Plaintiff requested more money and the company responded by increasing its severance offer. Plaintiff rejected this second offer and demanded even more money. Defendant refused and threatened to revoke the revised offer if he did not sign. This certainly was a threat, but it was one that Defendant was entitled to make. Furthermore, Plaintiff may have been strapped financially at the time he executed the release. However, the fact "[t]hat Plaintiff needed money at the time he signed the document does not rise to the level of economic duress." *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 632 (S.D. Tex. 2005).

In regards to the situation with his mother, the Court is sensitive to the financial and emotional difficulties this caused him during the Fall of 2002. That said, the Court finds that Plaintiff has failed to present sufficient evidence to establish a fact issue as to whether these difficulties rendered him unable to knowingly and willfully execute a valid release. Plaintiff himself testified that he had been dealing with his mother's situation for a long time and that it did not affect his job performance. (Def.'s App. at 42: Preston Dep. 142:21–143:23.)

Furthermore, examining the totality of the circumstances in light of the *O'Hare* factors, the only reasonable conclusion is that Plaintiff knowingly and willfully entered into the Agreement. First, Plaintiff was an experienced businessperson, having dealt with executive level employees at companies as large as Omega World Travel and Travelocity. (Def.'s App. at 108–09, 119–21: Singer Dep. 9:7–13:16; Johnson Dep. 12:18–14:24.) In addition, his business affairs apparently

involved a significant amount of negotiating. For example, Plaintiff negotiated with Travelocity for three months before entering into an agreement with the company. (Def.'s App. at 121: Johnson Dep. 14: 20–23.) Furthermore, Plaintiff was well educated, having completed three and a half years of college. (*Id.* at 14: Preston Dep. 14:4–10.) Second, the Agreement gave Plaintiff seven days to execute it and Plaintiff had possession of the document for six days before doing so. He testified at his deposition that he read every word of the Agreement and that he read it more than once. (*Id.* at 62: Preston Dep. 236:5–13.) While a revised agreement was sent to Plaintiff the day he executed it, there is no evidence that the revised agreement contained significant changes beyond the amount of the severance payment, which appears to be the only term the parties negotiated. Third, the record suggests that Plaintiff had ample opportunity to negotiate the terms of the Agreement and did successfully negotiate an increase in the amount of severance pay. Fourth, the Agreement is clearly drafted and expressly waives "any and all claims of discrimination of any kind" and all claims under Title VII of the Civil Rights Act of 1964. Plaintiff testified that at the time he signed the release he knew of the Civil Rights Act of 1964 and also believed that he was the victim of discrimination. (*Id.* at 66: Preston Dep. 250:7–16.) In regards to the fifth factor, Plaintiff was not represented by an attorney, but he had sufficient time to consult one and was urged, in writing, to do so. The sixth factor was considered at length above.

In sum, the Court concludes that Plaintiff has failed to establish a fact issue as to the validity of the release. Because Plaintiff released any claims arising under Title VII, Defendant is entitled to summary judgment on the discrimination claim.[2]

### B. Attorneys Fees

Defendant also seeks summary judgment on its counterclaim for attorneys fees pursuant to Texas Civil Practice and Remedies Code § 38.001(a). Plaintiff admits in his response that Defendant is entitled to an award of attorneys fees once the Court finds that there is a valid release. (Resp. at 17.) Yet Plaintiff does argue that Defendant is not entitled to the full amount of attorneys fees because defense counsel has not separated out the work done on the discrimination claim from that performed on the breach of contract counterclaim. This argument, however, fails to appreciate that the damages caused by Plaintiff's breach are the full amount of attorneys fees and expenses incurred in litigating this case. If Plaintiff had not breached the Agreement, Defendant would not have incurred any of the expenses associated with the instant suit. Defendant has provided evidence, in the form of affidavit testimony from its attorney, indicating that the total fees and expenses incurred in this case amounts to $27,486.45. The Court is of the opinion that this constitutes a reasonable amount given the volume of discovery conducted and the issues presented at summary judgment.

---

[2] While the parties did not brief the issue, it appears that Plaintiff has not returned the severance payment despite his claim that the release was invalid. As a result, a colorable argument can also be made that Plaintiff has ratified the release. *See, e.g., Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 322–23 (5th Cir. 2003); *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 221 (5th Cir. 1991).

## Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Motion for Partial Summary Judgment.   Plaintiff's Title VII discrimination claim against Defendant is thus DISMISSED WITH PREJUDICE.  In addition, Defendant is entitled to recover, pursuant to Texas Civil Practice and Remedies Code § 38.001(a), attorneys fees in the amount of $27,486.45.

**It is so ordered.**

Signed this 23rd day of March 2006.


JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE